IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JAMES M. GOURLEY, JR.**, | Case No. 6:15-cv-00812-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Commissioner of Social Security | |
| Defendant. | |

George J. Wall, 1336 East Burnside Street, Suite 130, Portland, Oregon 97214. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hebert, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 Southwest Third Avenue, Suite 600, Portland, Oregon, 97204-2902; Thomas M. Elsberry, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, Washington 98104-7075. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

James M. Gourley, Jr. ("Plaintiff") applied for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI"). The final decision of the Commissioner of the Social

Security Administration ("Commissioner") held that Plaintiff's disability began March 22, 2010,

which was after Plaintiff's date last insured. Thus, the Comissioner denied Plaintiff's application

PAGE 1 – OPINION AND ORDER

for DIB and granted his application for SSI beginning March 22, 2010. Plaintiff seeks review of this final decision by the Commissioner, arguing that Plaintiff became disabled beginning on March 31, 2008, before his date last insured and that he is thus entitled to DIB and SSI beginning on that earlier date. For the following reasons, the Commissioner's decision is REVERSED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff was a world-ranked competitive wrestler in college. AR 32. He suffered wrestling injuries to his knees, neck, and shoulder, which created chronic problems. AR 600. Plaintiff filed an application for DIB on April 28, 2009, and later filed an application for both DIB and SSI on March 22, 2010, initially alleging disability as of September 5, 2007, and later amending the alleged onset date to October 31, 2008. AR 22, 156. Plaintiff was 27 years old on the latter alleged disability onset date. AR 109. Plaintiff is classified as a "younger individual" under the regulations, with more than a high school education. AR 70. Plaintiff alleges disability due to bulged discs, disc fusion, chronic pain in the neck, lower back, and right shoulder, chronic exhaustion, depression, tingling and burning in the upper and lower extremities, and migraine headaches. AR 49, 109, 129. The Commissioner denied Plaintiff's application initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 156, 179, 184, 191, 195.

After a video hearing was held on July 3, 2012, an ALJ, in a decision dated July 18, 2012, found Plaintiff not disabled. AR 153-173. The Appeals Council reviewed the matter and remanded the case for further proceedings with several special instructions, including further consideration of lay witness testimony, Plaintiff's right shoulder impairment, maximum residual functional capacity, and subjective complaints. AR 175-177. After a second hearing was held on September 16, 2014, another ALJ found Plaintiff disabled as of his amended alleged onset date, October 31, 2008. AR 22, 63.

On January 29, 2015, 57 days after the second ALJ's decision, the Appeals Council notified Plaintiff that it would review that decision on its own motion. AR 18, 282. On March 26, 2015, the Appeals Council vacated the ALJ's decision and issued a partially favorable decision,

finding Plaintiff disabled as of March 22, 2010. AR 1-13. Specifically, the Appeals Council

found Plaintiff's subjective testimony not credible to the extent that it related to the period before

March 22, 2010, and that Plaintiff's migraines were not a severe impairment until July 2010.

AR 7-8, 10. Because the Appeals Council determined that Plaintiff was not disabled until March

22, 2010, he was not disabled on or before December 31, 2009, his date last insured. Thus, the

Appeals Council found that Plaintiff is not entitled to DIB and is entitled only to SSI beginning

March 22, 2010. AR 13. Plaintiff now seeks review in this Court of the Appeals Council's

decision, which is a final, reviewable decision by the Commissioner.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An

impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

**C.  The Appeals Council's Decision**

The Appeals Council applied the sequential process. AR 6-11. At step one, the Appeals

Council found that Plaintiff has not engaged in substantial gainful activity after the alleged

disability onset date of October 31, 2008. AR 7. At step two, the Appeals Council found that

from October 31, 2008 through March 21, 2010, Plaintiff had the following severe impairments:

cervical degenerative disc disorder, joint disease with upper extremity radiculopathy, and

obesity.[1] *Id.* At step three, the Appeals Council found that after October 31, 2008, Plaintiff did

not have an impairment or combination of impairments that met or medically equaled the

severity of one of the specific impairments listed in the regulations. *Id.*

The Appeals Council found that for the period between October 31, 2008, and March 21,

2010, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with

occasional climbing of ladders, ropes, or scaffolds, stooping, kneeling, crouching and crawling,

---

[1] Beginning March 22, 2010, the Appeals Council found that Plaintiff had the following
severe impairments: cervical and lumbar spine degenerative disc disorder and joint disease with
history of fusion surgery and recurrent radiculopathy (post-laminectomy syndrome), migraine
headaches, and right shoulder chondromalacia with bicipital tendonitis, post SLAP debridement
surgery. AR 11.

and avoidance of concentrated exposure to vibration.[2] AR 12. At step four, the Appeals Council

found that after October 31, 2008, Plaintiff was not capable of performing past relevant work.[3]

AR 10. At step five, the Appeals Council found that, for the period from October 31, 2008

through March 21, 2010, Plaintiff was capable of adjusting to other work that exists in

significant numbers in the national economy based on Plaintiff's RFC, age, education, and work

experience. AR 12-13. The Appeals Council found that on and after March 22, 2010, Plaintiff

did not have skills that would transfer to an occupation within his RFC to perform and that there

were no jobs that exist in significant numbers in the national economy that Plaintiff could

perform. *Id.* The Appeals Council concluded that Plaintiff was under a disability, as defined in

the Social Security Act, as of March 22, 2010, but not before that date. AR 13.

---

[2] Beginning March 22, 2010, the Appeals Council found that Plaintiff:

> [H]as the residual functional capacity to perform a narrow range of
> light work. The claimant could lift and/or carry 20 pounds
> occasionally and 10 pounds frequently, stand and walk 3 of 8 hours
> for 1 hour at a time, and sit 7 to 8 hours. Further, he can
> occasionally reach overhead with the right upper extremity and
> frequently in other directions, as well as, occasionally handle,
> finger, feel, push/pull on the right. With the left upper
> extrennty [sic], he can frequently reach, handle, and finger. He can
> frequently climb stairs/ramps, balance, and use feet to operate
> controls, and occasionally climb ladders, stoop, kneel, crouch, and
> crawl. He needs to avoid concentrated exposure to hazards, lung
> irritants, and vibrations (can do occasionally). He would be off-
> task 20% of the time due to pain and headaches. He would miss
> work more than 2 days per month.

AR 12.

[3] The Appeals Council found that Plaintiff's past work as a teacher's aide, which the
vocational expert classified as light work, did not result in sufficient earnings to be presumed
substantial gainful activity. AR 10. Therefore, the Appeals Council found that this work was not
past relevant work and that Plaintiff was not capable of performing other past relevant work
activity for the entire period at issue. *Id.*

## DISCUSSION

Plaintiff seeks review of the determination by the Appeals Council that he was not under a disability between the alleged onset disability date, October 31, 2008 and Plaintiff's application date, March 22, 2010. Plaintiff argues that the Appeals Council erred by: (A) improperly vacating the ALJ's decision; (B) improperly finding that migraine headaches were not a severe impairment until July 2010; (C) improperly finding Plaintiff's subjective symptom testimony not fully credible to the extent it pertains to the period before March 22, 2010; and (D) improperly rejecting the lay witness testimony of Valerie Prise.

### A.  Authority of the Appeals Council to Vacate the Decision of the ALJ

Plaintiff contends that the Appeals Council must uphold an ALJ's decision if it is supported by substantial evidence, and therefore the Appeals Council erroneously vacated the opinion of the ALJ. Under 42 U.S.C. 405(b), however, the Commissioner is authorized on her own motion to hold such hearings as she may deem necessary or proper. Further, the regulations provide that anytime within 60 days after the date of a decision, "the Appeals Council may decide on its own motion to review the action that was taken." 20 C.F.R. 404.969(a). The regulations also provide for mandatory review where an ALJ's decision is not supported by substantial evidence. *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985) (citing 20 C.F.R. 404.970(a)(3)). Thus, the Appeals Council has authority to review the merits of the ALJ's determination of disability and is "not required to adopt the particular findings of the ALJ even if those findings were supported by substantial evidence." *Taylor*, 765 F.2d at 875.

A decision is not final until the Appeals Council either denies review or assumes jurisdiction and issues its own decision. 20 C.F.R. 404.955. Because the Appeals Council vacated the ALJ's decision and issued its own decision, the Appeals Council's decision became the Commissioner's final decision. 20 C.F.R. 404.969; 404.979. Judicial review is limited to the

"final decision" of the Commissioner. 42 U.S.C. 405(g). On appeal, the task of the court is to "review the decision of the Appeals Council under the substantial evidence standard, not the decision of the ALJ." *Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986) (citing *Beavers v. Secretary of H.E.W.,* 577 F.2d 383, 387-88 (6th Cir. 1978) (recognizing that the Appeals Council has the power to reject the findings of an ALJ, so long as it states its reasons for doing so)). Therefore, the Court will consider the opinion of the Appeals Council and determine whether that decision is supported by substantial evidence in the record as a whole.

**B.  Whether Plaintiff's Migraine Headaches were a Severe Impairment**

Plaintiff argues that the Appeals Council erred at step two because it failed to find his migraine headaches to be a severe impairment before July 2010. At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments; step two findings must be based upon medical evidence. 20 C.F.R. § 404.1520(a). An impairment is not severe if it does not significantly limit the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520(c). "Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two." *Harrison v. Astrue*, 2011 WL 2619504, *7 (D. Or. July 1, 2011) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)).

The Appeals Council stated that the medical evidence does not support a finding that headaches were a severe impairment until May 2010. AR 7-8. The only reason the Appeals Council provided to discount Plaintiff's headaches before May 2010 is that a formal diagnosis was not made until July 2010. This conclusion is not supported by the record.

The record contains many reports by Plaintiff that he suffered from headaches before May 2010. On September 6, 2006, Plaintiff reported to Dr. Bart P. Raek that Plaintiff suffered from headaches. AR 918. On November 1, 2006, during an emergency room visit, Plaintiff reported that he had suffered from chronic headaches since his original neck injury in 2003.

AR 447. On November 10, 2008, Plaintiff reported frequent headaches and severe neck pain to

treating neurologist Dr. Barbara J. Hills. AR 466. Plaintiff visited Dr. Hills again on May 21,

2010, complaining of "intractable migraine headaches." AR 466. In her chart notes for Plaintiff's

May 21, 2010 visit, Dr. Hills noted that in November 2008 Plaintiff had complained of "frequent

migraine headaches." *Id.* On July 29, 2010, Plaintiff visited Rick Parrish, certified physician

assistant, for treatment of his headaches. AR 482-85. Plaintiff reported chronic headaches since

his 2008 cervical surgery, which were a mix of migraine and tension headaches. He was

diagnosed with chronic headache, consistent with tension headache with a migraine component,

and chronic neck pain. On January 13, 2012, examining physician Alan Blake M.D. noted that

Plaintiff reported suffering from migraines but that Dr. Blake believed Plaintiff's headaches were

occipital[4] tension headaches. AR 561. On June 28, 2012, Dr. Laura Rung opined that Plaintiff's

headaches were likely caused by his neck problems. AR 603. The fact that Plaintiff's headaches

were likely caused by his neck problems, which were present well before the date last insured,

contradicts the Appeals Council's finding that Plaintiff's headaches were not a severe

impairment until after March 2010.

Additionally, the Appeals Council appears to have disregarded the fact that "[m]edical

evaluations made after the expiration of a claimant's insured status are relevant to an evaluation

of the pre-expiration condition." *Sampson v. Chater*, 103 F.3d 918, 922 (9th Cir. 1996)

(quotation marks omitted) (quotation marks omitted). "In fact, it is not uncommon that a

physician's examination completed two or more years after the insured status expiration date is

---

[4] The occipital nerves emerge from between the bones of the cervical spine, and occipital-triggered headaches can be caused by a pinched nerve in the neck from arthritis or other neck injury. *See Occipital Neuralgia*, *available at* http://www.hopkinsmedicine.org/healthlibrary/conditions/adult/nervous_system_disorders/Occip ital_Neuralgia_22,OccipitalNeuralgia (last visited April 28, 2016).

considered relevant." *Barnard v. Comm'r of Soc. Sec. Admin.*, 286 F. App'x 989, 994 (9th Cir. 2008); *see also McCartey v. Massanari*, 298 F.3d 1072, 1077 n.7 (9th Cir. 2002) (holding that the Appeals Council erred in determining that medical records after the date last insured were immaterial because they were probative of the fact that claimant was disabled before the date last insured).

Plaintiff's 2010 diagnosis of *chronic* headaches that are likely caused by his neck problems does not preclude finding that his severe headaches occurred before the date of the diagnosis and actually shows to the contrary because the practitioners expressly considered Plaintiff's ongoing history of chronic headaches. This conclusion is further supported by those portions of the record that reveal Plaintiff's regular complaints of neck problems and headaches before May 2010. The medical evidence from Plaintiff's 2010 diagnoses of chronic headaches likely caused by neck problems, as well as Plaintiff's 2007 diagnosis of disc degeneration and 2008 diagnosis of cervical stenosis and spondylosis, support Plaintiff's consistent allegations of migraine headache and their severity at least as of October 31, 2008. The Appeals Council's conclusion that Plaintiff's migraines were not a severe impairment until July 2010 is contrary to the medical evidence in the record and is not supported by substantial evidence.

## C.  Plaintiff's Credibility

Plaintiff contends that the Appeals Council failed to articulate clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's subjective symptom statements regarding the severity of his impairments before March 22, 2010. There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other

symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other

symptoms. *See* SSR 16-3p, *available at* 2016 WL 1119029. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid[,] [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . . ." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

Plaintiff testified at his hearings that his ability to work is limited by the pain in his neck, right shoulder, and lower back, tingling and burning in the arms and legs, and migraine headaches correlating to neck pain. AR 49, 85, 88. Plaintiff testified that the numbness and tingling in his extremities began in 2003. AR 85. From 2004 through 2006, Plaintiff received nerve blocks in his arm for pain. AR 416. During a November 2006 emergency room visit, Plaintiff reported headaches, numbness in right fingers and toes, nausea and vomiting. AR 447.

A January 2007 Magnetic Resonance Imaging ("MRI") revealed multilevel disc degeneration and foraminal stenosis. AR 470. On October 31, 2008, Plaintiff went to the emergency room complaining of back and neck pain and upper extremity paresthesia that had been getting increasingly severe over the past 12 months. AR 455. He reported pain in his lower back with an intensity of 10. AR 458. On November 10, 2008, Plaintiff sought treatment with Dr. Hills, reporting pain in his neck and back, numbness and tingling in his extremities, and frequent headaches. In December 2008, Plaintiff underwent C5-6 and C6-7 anterior cervical

PAGE 13 – OPINION AND ORDER

diskectomy[5] and spinal fusion.[6] AR 407. Plaintiff's surgeon, Keyvan Abtin, M.D., diagnosed Plaintiff with C5-6 cervical stenosis, cervical spondylosis, neck pain, and cervical radiculopathies. *Id.* On January 7, 2009, one month after his surgery, Plaintiff reported persistent posterior neck and shoulder pain; and significant fatigue. AR 932. On March 5, 2009, three months after surgery, Plaintiff reported significant reduction in preoperative symptoms but continued to have issues with chronic pain, and was referred to a pain clinic. AR 931. On March 24, 2009, Plaintiff presented to Bryce Cleary, M.D. and reported constant neck and back pain. AR 606-607.

On May 21, 2010, Plaintiff presented to Dr. Hills and reported that following his cervical surgery he initially felt significantly better. AR 461. Plaintiff noted, however, that over the course of several months leading up to this appointment he suffered from severe neck pain, burning pins and needles in his upper and lower extremities, back pain, and intractable migraine headaches. *Id.* Dr. Hills diagnosed Plaintiff with cervical spondylosis with myelopathy; migraines; numbness; and back pain. AR 462. On July 29, 2010, Plaintiff was diagnosed with chronic headache, consistent with occipital tension headache, chronic neck pain, and chronic low back pain. AR 484-85.

The Appeals Council found that the alleged intensity, persistence and limiting effects of Plaintiff's impairments before March 22, 2010, are not fully credible. AR 10. In support of this conclusion, the Appeals Council stated that Plaintiff's testimony conflicts with: (1) the objective medical evidence and clinical findings; (2) Plaintiff's statements to treatment providers;

---

[5] "Diskectomy" is defined as "[s]urgical removal of a herniated intervertebral disk." *Taber's Cyclopedic Medical Dictionary* 671 (Donald Venes et al. eds. 2009).

[6] "Spinal fusion" is the surgical "immobilization of adjacent vertebrae." *Taber's Cyclopedic Medical Dictionary* 2174 (Donald Venes et al. eds. 2009).

(3) Plaintiff's return to college; and (4) the lack of significant treatment from April 2009 to May 2010. *Id.*

### 1. The Objective Medical Evidence and Clinical Findings

The Appeals Council found that Plaintiff's testimony regarding his symptoms from before March 22, 2010, was not fully credible when compared to the objective medical evidence and clinical findings. AR 10. The Appeals Council, however, did not identify any particular inconsistency between Plaintiff's testimony and any clinical finding or objective medical record. The Appeals Council noted that *the ALJ* had found Plaintiff's shoulder impairment and migraine headaches to be severe impairments as of the alleged disability onset date, and the Appeals Council discussed the medical evidence as supporting a finding that these impairments became severe at a later date. AR 7-8. No testimony of Plaintiff is included in this discussion. The Appeals Council then discussed the medical evidence relating to Plaintiff's degenerative disc disorder, joint disease, and obesity, and how it did not support the ALJ's conclusions that Plaintiff would be off-task 20 percent of the time. AR 8-9. The Appeals Council continued to recite the medical evidence and then summarily concluded that: "The alleged intensity, persistence and limiting effects of the claimant's impairments prior to March 22, 2010, are not fully credible when compared to the objective medical evidence, the claimant's statements to treatment providers, clinical findings . . . ." AR 10.

As recently explained in detail by the Ninth Circuit Court of Appeals, such a discussion is insufficient to provide a clear and convincing reason to discount a social security claimant's credibility:

> We disagree with the district court that the ALJ "identified several inconsistencies between [Brown–Hunter's] testimony and the record," and therefore "gave clear and convincing reasons to support" her non-credibility determination. Our review of the ALJ's written decision reveals that she did not specifically identify

any such inconsistencies; she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination. This is not the sort of explanation or the kind of "specific reasons" we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited. Although the inconsistencies identified by the district court could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make, and ours only to review. As we have long held, "[W]e are constrained to *review* the reasons the *ALJ* asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (emphasis added). Thus, the inconsistencies identified independently by the district court cannot provide the basis upon which we can affirm the ALJ's decision. Indeed, "[o]ur decisions make clear that we may not take a general finding—an unspecified conflict between Claimant's testimony ... and her reports to doctors—and comb the administrative record to find specific conflicts." *Burrell* [*v. Colvin*], 775 F.3d [1133,] 1138 [(9th Cir. 2014)]. Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error. See *id.* at 1139 (holding that the ALJ committed legal error because he "never *connected* the medical record to Claimant's testimony" nor made "a specific finding *linking* a lack of medical records to Claimant's testimony about the intensity of her ... pain" (emphasis added)). Even if the district court's analysis was sound, it could not overcome the error of the ALJ. That is, the error could not be corrected by the district court's statement of links between claimant testimony and certain medical evidence.

\* \* \*

Although the ALJ summarized a significant portion of the administrative record in support of her RFC determination, providing a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible. We reject the Commissioner's argument, also rejected in *Treichler*, that because the ALJ "set out his RFC and summarized the evidence supporting his determination" we can infer "that the ALJ rejected [petitioner's] testimony to the extent it conflicted with that medical evidence." *Treichler* [*v. Comm'r of Soc. Sec. Admin.*, 775 F.3d [1090,] 1099 [(9th Cir. 2014)]. We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting Brown–Hunter's pain testimony where, as here, the ALJ never identified *which* testimony she found

PAGE 16 – OPINION AND ORDER

> not credible, and never explained *which* evidence contradicted that testimony. *Burrell*, 775 F.3d at 1138. This "falls short of meeting the ALJ's responsibility to provide ... 'the reason or reasons upon which' [her] adverse determination is based." *Treichler*, 775 F.3d at 1103, quoting 42 U.S.C. § 405(b)(1).

*Brown-Hunter v. Colvin*, 806 F.3d 487, 493-95 (9th Cir. 2015) (alterations to full citations added, all other alterations in original) (emphasis in original).

Moreover, even assuming that the Appeals Council's discussion of why the ALJ's conclusions were in error were meant also to highlight areas of inconsistency in Plaintiff's testimony, a review of the record demonstrates that such a conclusion is not supported by substantial evidence in the record. Regarding Plaintiff's shoulder impairment, Plaintiff's hearing testimony shows that in his 2012 hearing he spoke of his shoulder pain only in the present tense, and in the 2014 hearing he spoke of it historically regarding when he dislocated his shoulder while wrestling and in relation to the numbness and tingling he felt in both extremities. AR 49, 83, 85. He then discussed his 2012 doctor visits and shoulder surgery. AR 85, 86.  Thus, his testimony does not contradict the medical evidence. Regarding Plaintiff's testimony about his headaches, for the reasons discussed above relating to the Appeals Council's determination that Plaintiff's migraines were not a severe impairment, the Appeals Council's determination that the objective medical evidence contradicted Plaintiff's headaches as occurring before May 2010 is not supported by substantial evidence in the record.

Regarding Plaintiff's lumbar disc impairment, the record does not support the Appeals Council's characterization of this impairment. While Plaintiff's May 26, 2010 MRI definitively found "lower lumbar disk and facet degeneration" as well as "[m]oderate left foraminal narrowing," AR 473, Plaintiff had received diagnoses before this point. On March 24, 2009, Plaintiff's treating physician, Dr. Cleary, diagnosed Plaintiff with severe back pain and prescribed pain medications such as oxycodone, acetaminophen, and cyclobenzaprine. AR 607.

Additionally, on May 21, 2010, Dr. Hills diagnosed Plaintiff with back pain. AR 462. Further, Plaintiff complained of back pain during his emergency room visit on November 1, 2006, his emergency room visit on October 31, 2008, and his visit with Dr. Hill on November 10, 2008. AR 447, 458, 466. Finally, regarding Plaintiff's severe impairments of cervical degenerative disc disorder and joint disease and obesity, the record shows that Plaintiff was obese throughout the relevant time period and that he suffered from significant neck pain, with only transient improvement from his surgery.

Before his surgery, Plaintiff repeatedly sought treatment and received diagnoses relating to his neck pain. *See, e.g.*, AR 928 (September 2006 complaint of neck pain); AR 927 (January and March 2007 complaints of neck pain); AR 458 (October 31, 2008 complaint of neck pain); AR 466 (November 10, 2008 complaint of neck pain). Notably, Plaintiff underwent surgery on his neck, a significant and invasive treatment, in December 2008. The record shows that his relief from surgery was incomplete and was short-lived.

In January 2009, one month after surgery, Plaintiff reported persistent posterior neck and shoulder pain and was encouraged to attend physical therapy. AR 932. On March 5, 2009, three months after surgery, Plaintiff reported significant reduction in preoperative symptoms but that he continued to have issues with chronic pain, and was referred to a pain clinic. AR 931. On March 24, 2009, Plaintiff presented to Dr. Cleary and reported constant neck and back pain. AR 606. On May 21, 2010, Plaintiff presented to Dr. Hills and reported that following his cervical surgery he initially felt significantly better but developed neck pain over the course of the "past several months." AR 461. Dr. Hills diagnosed Plaintiff with cervical spondylosis with myelopathy. AR 462. On July 29, 2010, Plaintiff was diagnosed with chronic neck pain "severely limiting the patient's activity and quality of life." AR 484.

The Appeals Council's conclusory determination that Plaintiff's testimony regarding his symptoms and limitations was contradicted by the objective medical evidence and clinical findings is not sufficiently specific to provide and clear and convincing reason to discount Plaintiff's credibility, and even if it were, it is not supported by substantial evidence in the record. This is not a clear and convincing reason to discount Plaintiff's credibility.

### 2. Plaintiff's Statements to Treatment Providers

The Appeals Council also found that Plaintiff's subjective complaints for the time period before March 22, 2010, were inconsistent with his statements to treatment providers. AR 10. Again, the Appeals Council did not identify or specify what testimony by Plaintiff was contradicted with what statements to treatment providers. It appears that the Appeals Council concluded that Plaintiff's statements regarding the ongoing limitations from his cervical spine issues are contradicted by his statements to providers in early 2010. This determination is not supported by substantial evidence in the record and is not a clear and convincing reason to discount Plaintiff's credibility.

During Plaintiff's three-month post-operative rehabilitation period, he complained of persistent posterior neck, shoulder, and back pain, as well as significant fatigue. AR 606-607, 931, 932. Notably, on March 24, 2009, nearly four months after his surgery, Plaintiff complained of constant neck and back pain. AR 606. In April 2009, Plaintiff sought treatment for severe back pain, was prescribed pain medication, and was referred for a lumbar MRI. AR 607. These statements to providers, made contemporaneously during the earlier time period Plaintiff alleges he was disabled, support Plaintiff's allegations. The Appeals Council appears to have improperly ignored these statements, and selectively looked only at his later statements. Further, even if such selective review of the record were permissible, the later statements by Plaintiff do not contradict his allegations and his contemporaneous statements made in 2009.

PAGE 19 – OPINION AND ORDER

Plaintiff made general statements in April and May 2010 characterizing his short-lived improvement from surgery. On April 22, 2010, he reported that his pain was initially tolerable after surgery but "now it has become constant." AR 437. On May 18, 2010, he reported that he has been in chronic neck pain since 2008 and that it has been "worse" over the past three weeks. AR 444-46. On May 21, 2010, he reported that his pain was initially tolerable after surgery but that he is in a lot of pain and that over the "past several months" it escalated to the point that he has missed much of school. AR 461. The fact that in April and May 2010 Plaintiff characterized his pain as chronic since 2008 with worsening over the "past three weeks" or "past several months" does not contradict his allegation that despite his surgery his neck pain was disabling before the date last insured, as is demonstrated by Plaintiff's reports to his providers in 2009.

### 3.  Plaintiff's Return to College

The Appeals Council determined that Plaintiff's return to college during the period at issue reflected negatively on Plaintiff's credibility regarding his subjective symptom testimony. AR 10. Specifically, the Appeals Council points to Plaintiff's request in August 2009 that Jeremy Lake, M.D. write Plaintiff a letter giving Plaintiff permission to return to college. AR 8, 436. Dr. Lake noted that Plaintiff "feels as if he is ready to go back" and "is trying to get everything lined up to return to school." AR 436.

The Commissioner relies on *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008),  in which the Ninth Circuit upheld an ALJ's rejection of a claimant's assertion that he needed to "change positions constantly when sitting, finding it inconsistent with [the claimant's] full-time college attendance," to support the Appeals Council's finding. *Id*. at 1161 (quotation marks omitted). The pending case, however, is distinguishable from *Carmickle* because Plaintiff's testimony is not inconsistent with his return to school, particularly given the level of his performance at school.

PAGE 20 – OPINION AND ORDER

Plaintiff's return to college is not inconsistent with his testimony of pain and migraine headaches. Plaintiff testified he that was often absent from class, took his tests from home with extra time being allowed, and had his girlfriend type his papers for him. AR 34-35. His girlfriend, Valerie Prise, corroborated this testimony. AR 349. Additionally, in May 2010, Plaintiff had reported to Dr. Hills that he had missed classes. AR 461. Further, Plaintiff's grade point average dropped from a 3.6 to a 2.05. AR 34-35. Plaintiff struggled and barely graduated. *Id.* The fact that Plaintiff made an effort, with much difficulty, to do more than lie in a dark room and finish his degree, is not a clear and convincing reason to discount his testimony. *See Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014) ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").

### 4.  Lack of Significant Treatment for the Period

The Appeals Council noted that Plaintiff's lack of significant treatment from April 2009 through April 2010,[7] reflected negatively on Plaintiff's credibility. AR 10. The Commissioner "is permitted to consider lack of treatment in [its] credibility determination." *Burch*, 400 F.3d at 681.

The Appeals Council offered no specific discussion or explanation why a one-year gap in treatment reflects negatively on Plaintiff's credibility. Nor did the Appeals Council consider why Plaintiff did not seek treatment during that year. The Commissioner may not draw inferences regarding a plaintiff's symptoms and their functional effects from failure to seek medical treatment "without considering possible reasons he or she may not comply with treatment or seek

---

[7] The Appeals Council discusses Plaintiff's treatment gap as being from April 2009 through May 2010, but the record shows that Plaintiff sought treatment in April 2010.

treatment consistent with the degree of his or her complaints." SSR 16-3p, *available at* 2016 WL 1119029; *Byrnes v. Shalala*, 60 F.3d 639, 641 (9th Cir. 1995) (the adjudicator must first "examine the medical conditions and personal factors that bear on whether [the claimant] can reasonably remedy his impairment.") (quotation marks omitted). In such a case, the adjudicator "may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." SSR16-3p, *available at* 2016 WL 1119029. The Appeals Council did not consider such information.

Moreover, the record evidence does not support the conclusion that the lack of treatment between April 2009 and April 2010 demonstrates that Plaintiff's symptoms were less than he alleges. To the contrary, the record demonstrates the opposite inference. The record shows that Plaintiff underwent fusion surgery at C5-6 and C6-7 in December 2008. AR 407. Spinal fusion is a nonreversible "[s]urgical immobilization of adjacent vertebrae." *Taber's Cyclopedic Medical Dictionary* 2174 (Donald Venes et al. eds. 2009). Both three and four months after surgery, Plaintiff complained of continuing neck and back pain. A year later, in April and May 2010, he reported chronic neck and back pain. Plaintiff's cervical fusion surgery was a treatment of last-resort, and it did not resolve Plaintiff's symptoms. There is no indication that additional doctor visits between April 2009 and April 2010 would have made any difference in his symptoms. He did contact Dr. Lake to refill his medication, and prescribing medication appears to be all that his providers are able to do for him. This is demonstrated by Plaintiff's report on May 18, 2010, that he has "seen MD again, MD does not have an answer. [Plaintiff] says he's been through [three Primary Care Physicians], no answer." *Id.* This conclusion also is supported by the Appeals Council's determination that Plaintiff's neck pain was disabling as of March 22, 2010, despite

the fact that Plaintiff began seeking treatment again in 2010. The additional medical treatment after April 2010 did not improve Plaintiff's condition.

Additionally, Plaintiff testified that for "a couple of years" before his 2012 shoulder surgery he did not have insurance and did not see providers until he became eligible for the Oregon Health Plan because he did not have the means to pursue treatment. *See* AR 85. The Commissioner may not penalize a claimant for failing to seek treatment that he or she cannot afford. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (holding that failure to take steps to treat an impairment, when the plaintiff is financially unable to afford treatment, cannot serve as a clear and convincing reason to discredit a plaintiff's symptom testimony); *see also Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

The Appeals Council's conclusion that Plaintiff's failure to seek treatment between April 2009 and April 2010 rendered Plaintiff less than credible is not supported by substantial evidence in the record and is not a clear and convincing reason to discount Plaintiff's credibility.

**D.  Lay Witness Testimony of Valerie Prise**

Plaintiff argues that the Appeals Council improperly rejected the testimony of his then-girlfriend, Valerie Prise. Ms. Prise completed a third-party questionnaire on April 4, 2010. AR 344-51. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when

rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores uncontradicted lay witness testimony, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The Appeals Council's opinion ignored Ms. Prise's testimony without explanation. The Commissioner argues that this failure was harmless error because Ms. Prise drafted her statement on April 4, 2010, and the Appeals Council found Plaintiff disabled as of March 22, 2010. Thus, argues the Appeals Council, Ms. Prise's testimony could not establish anything greater than the finding of disability as of March 22, 2010. AR 12, 344. Ms. Prise's testimony, however, also addressed the relevant time period before March 22, 2010.

Ms. Prise stated that she has known Plaintiff for four years. AR 344. Ms. Prise testified that Plaintiff's pain has become so severe that he cannot get out of bed and wakes up in the middle of the night aching with numbness in his extremities. AR 345, 348. She also stated that over the years Plaintiff's participation in his interests, such as wrestling and outdoor activities,

has declined to nothing, which has given rise to his depression. AR 348. Ms. Prise added that "lifting, squatting, bending, standing, reaching, walking: doing any of these too long increase muscle spasms & nerve pain." AR 349. She stated that Plaintiff has trouble in school and difficulty finishing his homework. *Id.* Additionally, Ms. Prise stated that Plaintiff experiences pain in his neck when using his hands. AR 351. Ms. Prise's report of Plaintiff's functional abilities involved Ms. Prise's observations of Plaintiff, including his symptoms, limitations, abilities, daily living activities, and performance in school. Ms. Price also stated that she "now" lives in California, so her personal observations of Plaintiff necessarily took place before she completed her third-party report.

Additionally, because the Court has found that the Appeals Council did not provide clear and convincing reasons to reject Plaintiff's subjective testimony, those reasons may not properly be relied on to reject Ms. Prise's testimony describing similar limitations as Plaintiff's own testimony. The Appeals Council erred in failing to consider Ms. Prise's lay witness testimony as it related to the time period from October 31, 2008 to March 22, 2010.

## E. Remand for Benefits and the Credit-As-True Doctrine

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits

punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly

rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of*

*the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

      In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court.

*Garrison*, 759 F.3d at 999. It has been described by the United States Court of Appeals for the

Ninth Circuit as:

> [The Ninth Circuit has] devised a three-part credit-as-true standard,
> each part of which must be satisfied in order for a court to remand
> to an ALJ with instructions to calculate and award benefits: (1) the
> record has been fully developed and further administrative
> proceedings would serve no useful purpose; (2) the ALJ has failed
> to provide legally sufficient reasons for rejecting evidence,
> whether claimant testimony or medical opinion; and (3) if the
> improperly discredited evidence were credited as true, the ALJ
> would be required to find the claimant disabled on remand.

*Id.* at 1020.

      Ordinarily, if all three of these elements are satisfied, a district court must remand for a

calculation of benefits. *Id.* If, however, "an evaluation of the record as a whole creates serious

doubt that a claimant is, in fact, disabled," the district court retains the "flexibility" to remand for

further proceedings even when these elements are satisfied. *Id.* at 1021; *see also Burrell v.*

*Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (remanding for further proceedings without

analyzing whether the three factors are met "because, even assuming that they are, we conclude

that the record as a whole creates serious doubt as to whether Claimant is, in fact, disabled").

      Here, no further development of the record is necessary to support a finding of disability.

As explained above, the Appeals Council failed to provide legally sufficient reasons for

discrediting the subjective symptom testimony of Plaintiff, the lay witness testimony of

Ms. Prise, and the medical evidence in the record regarding Plaintiff's neck and back pain and

headaches from before May 2010. If this improperly rejected testimony were credited as true, the

Appeals Council would be required to find Plaintiff disabled on remand. The Court finds that no useful purpose would be served by further administrative proceedings. The case is therefore reversed and remanded for calculation of benefits.

## CONCLUSION

The ALJ's decision is reversed and remanded for immediate calculation of benefits.

**IT IS SO ORDERED**.

DATED this 31st day of May, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge
